UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DONNA CIPLEY,                                            **DOCKET NO.: CV-20-975**

                Plaintiff,

      - against -

COUNTY OF NASSAU, NASSAU COUNTY POLICE
DEPARTMENT, NASSAU COUNTY DISTRICT                      **COMPLAINT**
ATTORNEY'S OFFICE, DETECTIVE MIKE P.
MAZZARA, in his individual and official capacity,
DETECTIVE  ROBERT L. OBERG, in his individual
and official capacity, DETECTIVE MICHAEL A.
PERNA, in his individual and official capacity,
DETECTIVE JOSEPH N. RUBINI, in his individual
and official capacity, DETECTIVE ELLIOT B.
LICHTENSTEIN, in his individual and official capacity,
and DETECTIVE BASIL D. GOMEZ, in his individual
and official capacity, "JOHN DOES AND JANE DOES
1-10" representing as yet unknown and unidentified
members of the Nassau County and Nassau County's
Police Department

                Defendants.          ***TRIAL BY JURY DEMANDED***
-------------------------------------------------------------------X

      **PLAINTIFF,** by her attorneys, the LAW OFFICES OF FREDERICK K. BREWINGTON

as and for his *Complaint* against Defendants, respectfully states and alleges, upon information and

belief, as follows:

## PRELIMINARY STATEMENT

      1.    This is a civil action for money damages against DEFENDANTS COUNTY OF

NASSAU, NASSAU COUNTY POLICE DEPARTMENT, NASSAU COUNTY DISTRICT

ATTORNEY'S OFFICE, DETECTIVE MIKE P. MAZARA, in his individual and official capacity,

DETECTIVE ROBERT L. OBERG, in his individual and official capacity, DETECTIVE MICHAEL

A. PERNA, in his individual and official capacity, DETECTIVE JOSEPH N. RUBINO, in his

individual and official capacity, DETECTIVE ELLIOT B. LICHTENSTEIN, in his individual and

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

DONNA CIPLEY,                                      **DOCKET NO.:**

        Plaintiff,

   - against -

COUNTY OF NASSAU, NASSAU COUNTY POLICE
DEPARTMENT, NASSAU COUNTY DISTRICT                 **COMPLAINT**
ATTORNEY'S OFFICE, DETECTIVE MIKE P.
MAZZARA, in his individual and official capacity,
DETECTIVE ROBERT L. OBERG, in his individual
and official capacity, DETECTIVE MICHAEL A.
PERNA, in his individual and official capacity,
DETECTIVE JOSEPH N. RUBINI, in his individual
and official capacity, DETECTIVE ELLIOT B.
LICHTENSTEIN, in his individual and official capacity,
and DETECTIVE BASIL D. GOMEZ, in his individual
and official capacity, "JOHN DOES AND JANE DOES
1-10" representing as yet unknown and unidentified
members of the Nassau County and Nassau County's
Police Department

                Defendants.        ***TRIAL BY JURY DEMANDED***

------------------------------------------------------------------X

     **PLAINTIFF,** by her attorneys, the LAW OFFICES OF FREDERICK K. BREWINGTON

as and for his *Complaint* against Defendants, respectfully states and alleges, upon information and

belief, as follows:

## PRELIMINARY STATEMENT

     1.    This is a civil action for money damages against DEFENDANTS COUNTY OF

NASSAU, NASSAU COUNTY POLICE DEPARTMENT, NASSAU COUNTY DISTRICT

ATTORNEY'S OFFICE, DETECTIVE MIKE P. MAZARA, in his individual and official capacity,

DETECTIVE ROBERT L. OBERG, in his individual and official capacity, DETECTIVE MICHAEL

A. PERNA, in his individual and official capacity, DETECTIVE JOSEPH N. RUBINO, in his

individual and official capacity, DETECTIVE ELLIOT B. LICHTENSTEIN, in his individual and

official capacity, and DETECTIVE BASIL D. GOMEZ, in his individual and official capacity, and "JOHN DOES AND JANE DOES 1-10" representing as yet unknown and unidentified members of the Nassau County and Nassau County's Police Department, for committing acts under color of law and depriving PLAINTIFF of rights secured under 42 U.S.C. §1983 grounded in rights secured to her under the Fourth, Fifth and Fourteenth Amendments of the Constitution and laws of the United States and the State of New York.

2.      PLAINTIFF alleges that DEFENDANT DETECTIVES MIKE P. MAZARA, ROBERT L. OBERG, MICHAEL A. PERN, JOSEPH N. RUBINI, BASIL D. GOMEZ and JOHN DOES AND JANE DOES 1-10 (hereinafter collectively referred to as "DEFENDANT DETECTIVES"), engaged in unlawful conduct including assault, battery, false arrest, malicious prosecution, abuse of process, excessive force, intentional infliction of emotional distress and negligent infliction of emotional distress. All acts committed under the color of law and depriving PLAINTIFF of rights secured to her under the Fourth, Fifth and Fourteenth Amendments of the Constitution and laws of the United States and the State of New York.

3.      Specifically, PLAINTIFF alleges that DEFENDANTS COUNTY OF NASSAU, the NASSAU COUNTY POLICE DEPARTMENT, and the NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE failed to address either the assault or the abuses that arose from the same that PLAINTIFF suffered at the hands of the DEFENDANT DETECTIVES. PLAINTIFF was wrongfully harassed, threatened, assaulted and battered, detained, charged, abused, falsely accused, and falsely charged with crimes and violations of law, set out to public ridicule and made to suffer injury to her good name, her personage, her mental state of mind, without reason, legal basis or justification by COUNTY OF NASSAU, NASSAU COUNTY POLICE DEPARTMENT second

2

precinct, their agents, and employees including but not limited to DEFENDANT DETECTIVES MIKE P. MAZARA, DETECTIVE ROBERT L. OBERG, DETECTIVE MICHAEL A. PERN, DETECTIVE JOSEPH N. RUBINI, DETECTIVE BASIL D. GOMEZ and JOHN DOES AND JANE DOES 1-10.

4.    DEFENDANT DETECTIVES without probable cause, justification or any reason except an intent to deprive PLAINTIFF of her rights, and knowledge that their conduct had the tacit authorization of NASSAU COUNTY and the NASSAU COUNTY POLICE DEPARTMENT, assaulted, falsely arrested, and falsely charged PLAINTIFF in an effort to cover up the wrongdoing. Said use of unjustified force on PLAINTIFF deprived her of her civil and constitutional rights.

5.    PLAINTIFF alleges that NASSAU COUNTY is liable for the false arrest, abuse of process and attack on MS. CIPLEY by the DEFENDANT DETECTIVES, as employees and agents of DEFENDANT because NASSAU COUNTY has abused, condoned and permitted a pattern of abuse without justification and has failed to properly investigate such incidents and disciple the officer involved with the result that police officers and detectives of NASSAU COUNTY are encouraged to believe that they could violate the rights of persons such as the plaintiff with impunity and that NASSAU COUNTY has and continues to act in violation of individual rights, constituted through their actions and policy.

## JURISDICTION

6.    The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343.

7.    Venue in the Eastern District of New York is proper under 28 U.S.C. § §1391(b). The cause of action arose in the Eastern District of New York. Plaintiff resides in Nassau County.

3

## PARTIES

8.     Plaintiff DONNA CIPLEY (hereinafter PLAINTIFF, PLAINTIFF CIPLEY or MS. CIPLEY) is a natural person, who resides in the County of Nassau, State of New York, at all times relevant herein is a citizen of the United States.

9.     The DEFENDANT NASSAU COUNTY (hereinafter "NASSAU COUNTY") was and is a duly constituted municipal corporation of the State of New York and is/was the employer of the Nassau County Police Department second precinct and the Department's Police Officers and Detectives. DEFENDANT NASSAU COUNTY's business address is located at 1 West Street, Mineola, NY 11501.

10.     The DEFENDANT NASSAU COUNTY POLICE DEPARTMENT (hereinafter "NCPD") is an agency of NASSAU COUNTY. DEFENDANT NCPD's business address is located at 1490 Franklin Ave, Mineola, NY 11501.

11.     The DEFENDANT NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE (hereinafter "NCDA") is an agency of NASSAU COUNTY. DEFENDANT NCDA's business address is located at 262 Old Country Rd, Mineola, NY 11501.

12.     DEFENDANT DETECTIVES MIKE P. MAZARA (hereinafter "DEFENDANT DETECTIVE MAZARA"), upon information and belief, was an employee of DEFENDANTS NASSAU COUNTY and NCPD on March 12, 2019.

13.     DEFENDANT DETECTIVES ROBERT L. OBERG (hereinafter "DEFENDANT DETECTIVE OBERG"), upon information and belief, was an employee of DEFENDANTS NASSAU COUNTY and NCPD on March 12, 2019.

4

14.     DEFENDANT DETECTIVES MICHAEL A. PERN ("hereinafter "DEFENDANT DETECTIVE PERN"), upon information and belief, was an employee of DEFENDANTS NASSAU COUNTY and NCPD on March 12, 2019.

15.     DEFENDANT DETECTIVES JOSEPH N. RUBINI ("hereinafter "DEFENDANT DETECTIVE RUBINI"), upon information and belief, was an employee of DEFENDANTS NASSAU COUNTY and NCPD on March 12, 2019.

16.     DEFENDANT DETECTIVES BASIL D. GOMEZ ("hereinafter "DEFENDANT DETECTIVE GOMEZ"), upon information and belief, was an employee of DEFENDANTS NASSAU COUNTY and NCPD on March 12, 2019.

17.     DEFENDANT DETECTIVES JOHN DOES AND JANE DOES 1-10, upon information and belief, are employees of DEFENDANTS NASSAU COUNTY and NCPD on March 12, 2019.

18.     The DEFENDANT NASSAU COUNTY was and is the employer of members of the NCPD Second Precinct.

## FACTUAL ALLEGATIONS

19.     Ms. Cipley is a sixty-two (62) year old Caucasian woman.

20.     Ms. Cipley has been married for forty-two (42) years and is a mother to four (4) children and grandmother to seven (7) grandchildren.

21.     Ms. Cipley and her husband James Cipley Sr. (hereinafter "Mr. Cipley Sr.") have resided at the same address in Levittown, Nassau County, New York for over forty (40) years.

22.     Prior to the underlying herein incident, the DEFENDANT DETECTIVES regularly harassed PLAINTIFF's family and in particular, PLAINTIFF's son Mr. James Cipley Jr. (hereinafter

"Mr. Cipley Jr.").

23.     In or around the summer of 2018, Mr. Cipley Jr. was regularly harassed by the DEFENDANT DETECTIVES after he was hospitalized at Nassau University Medical Center ("NUMC") due to a drug related overdose.

24.     During the time that Mr. Cipley was a patient at NUMC, a Nassau County Police Detective (hereinafter "DEFENDANT DET. JOHN DOE #1"), whose identity is presently unknown to PLAINTIFF, visited Mr. Cipley Jr., to solicit information regarding the source of the drugs that Mr. Cipley ingested. DEFENDANT DET. JOHN DOE #1 asked Mr. Cipley Jr. to be a confidential informant, which Mr. Cipley Jr. declined.

25.     DEFENDANT DET. JOHN DOE #1 then continued to attempt to coerce Mr. Cipley into becoming a police informant for the Nassau County Police Department ("NCPD") by making threats of future harassment by the NCPD if Mr. Cipley Jr. refused to be an informant. DEFENDANT DET. JOHN DOE #1 only ceased to harass Mr. Cipley Jr. after PLAINTIFF objected to his presence and requested that he leave Mr. Cipley Jr.'s hospital room. Prior to leaving, DEFENDANT DET. JOHN DOE #1 told Mr. Cipley Jr. that "[h]e hasn't seen the last of him", insinuating that Mr. Cipley Jr. would be further harassed by the NCPD.

26.     After Mr. Cipley Jr. was released from the care of NCPD, he became a target of harassment and unwarranted arrests and physical abuse of the NCPD. On numerous occasions, Mr. Cipley Jr. has since been falsely arrested by the DEFENDANT NCPD's Officers and Detectives. Prior to the underlying incident, Mr. Cipley Jr. was beaten by NCPD Detectives and/or Officers and has since retained counsel to litigate the matter.

27. Moreover, the DEFENDANT DETECTIVES have, on occasion, harassed PLAINTIFF and Mr. Cipley at PLAINTIFF's home by making unsolicited visits to PLAINTIFF's home at all hours of the day and night without legal justification. The DEFENDANT DETECTIVES have, on numerous occasions, shined lights into PLAINTIFF's home, rang PLAINTIFF's door bell and left thereafter, in an effort to intimidate and harass Mr. Cipley for his refusal to be a police information for the NCPD.

28. PLAINTIFF is in possession of video footage of the DEFENDANT DETECTIVES persistent harassment and unsolicited visits to PLAINTIFF's home at all hours of the day and night without legal justification.

29. On March 12, 2019, at approximately 1:20 P.M., DEFENDANT DETECTIVES MAZARA, OBERG, PERN, RUBINI, GOMEZ and JOHN DOES AND JANE DOES 1-10, arrived at PLAINTIFF CIPLEY's home, in plain clothes, without a warrant, and in search of Mr. Cipley Jr..

30. At the time of their arrival, PLAINTIFF was on the phone tending to an unrelated matter. Upon information and belief, DEFENDANT DETECTIVE GOMEZ knocked on PLAINTIFF's front door without announcing himself as a Nassau County Police Officer.

31. Unbeknownst to PLAINTIFF, when the DEFENDANT DETECTIVES arrived, she mistakenly confused DEFENDANT DETECTIVE GOMEZ for her brother-in-law. As PLAINTIFF opened her front door, she immediately observed two of the DEFENDANT DETECTIVES run down both sides of her home in the direction of her backyard. PLAINTIFF, in shock from their presence, asked the DEFENDANT DETECTIVES what was the purpose of their unsolicited home visit. In response, DEFENDANT DETECTIVE GOMEZ told PLAINTIFF, "[d]on't worry about it. We can do whatever we want."

7

32.     PLAINTIFF again asked DEFENDANT DETECTIVE GOMEZ what the officers were doing at her home, and DEFENDANT GOMEZ responded that they were looking for Mr. Cipley Jr. and that they saw his vehicle outside of PLAINTIFF's home.

33.     PLAINTIFF then responded to DEFENDANT DETECTIVES by telling them that Mr. Cipley Jr. was not at their home and that the purported vehicle belonged to Mr. Cipley Jr.'s girlfriend, Bonnie LaBella (hereinafter "Ms. LaBella"). Mr. Cipley Jr. was not a resident of PLAINTIFF's home and maintained his own residence.

34.     As PLAINTIFF stood at the storm door of her home, with telephone in hand, approximately six or more DEFENDANT DETECTIVES aggressively approached the front door. PLAINTIFF then began to walk in a backward direction in an effort to go back inside. When PLAINTIFF extended her hand to close her storm door, approximately two DEFENDANT DETECTIVES grabbed onto the screen door to prevent PLAINTIFF from closing it.

35.     PLAINTIFF then requested that the DEFENDANT DETECTIVES leave her property and thereafter attempted to close her front door. DEFENDANT DETECTIVE GOMEZ, in an effort to stop PLAINTIFF, intentionally placed his hand in the path of the door and as a result, the door made contact with his hand.

36.     DEFENDANT DETECTIVE GOMEZ then yelled out to the other DEFENDANT DETECTIVES, "that's it - it's a go, it's a go! She attacked me!" The DEFENDANT DETECTIVES then immediately burst into PLAINTIFF'S front door and charged into the home.

37.     DEFENDANT DETECTIVES then grabbed PLAINTIFF and threw PLAINTIFF and her telephone, onto the ground and jumped on her back. PLAINTIFF, in shock from DEFENDANTS' actions, began to struggle and scream out to her husband, James Cipley, Sr.

8

("hereinafter Mr. Cipley, Sr.") for help.

38.    PLAINTIFF pleaded to the DEFENDANT DETECTIVES to get off of her and yelled out that she was recovering from a surgical operation on her kidney.

39.    The DEFENDANT DETECTIVES ignored PLAINTIFF and instead held her down while one DEFENDANT DETECTIVE stood on her hair, another pressed his foot down on PLAINTIFF'S right ankle and with another DEFENDANT DETECTIVE placing a knee into PLAINTIFF'S back and applying pressure to her recovering kidney. The DEFENDANT DETECTIVES then forced PLAINTIFF's arms behind her back and place handcuffs on her wrists.

40.    As PLAINTIFF was forcibly restrained on the floor, she saw DEFENDANT DETECTIVE RUBINI remove a knife from his person, expose the blade, and run up the staircase leading to the second floor of PLAINTIFF's home. Upon information and belief, the DEFENDANT DETECTIVE went upstairs and attempted to open the locked door leading to the second floor where PLAINTIFF's grandchildren were staying at the time. Upon information and belief, DEFENDANT DETECTIVE RUBINI was executing a warrantless search of PLAINTIFF's home for the purposes of finding Mr. Cipley Jr..

41.    PLAINTIFF yelled out "[y]ou're killing me!" and continued to plead to the DEFENDANT DETECTIVES to get off of her. However, the DEFENDANT DETECTIVES continued to ignore PLAINTIFF and remained hovering over her body. PLAINTIFF then called out to Mr. Cipley, Sr. for help. Mr. Cipley Sr. did not hear PLAINTIFF because, at the time, he had been bathing two of PLAINTIFF's grandchildren, ages three (3) and one (1) years old, in their bathroom.

42.    When Mr. Cipley Sr. learned that the DEFENDANT DETECTIVES entered his home, with his grandchild in hand, he confronted the DEFENDANT DETECTIVES and asked their

9

purpose for being at the home. The DEFENDANT DETECTIVE responded by pushing Mr. Cipley Sr. in his chest and saying "[i]t looks like you're a bad parent."

43.    Mr. Cipley Sr. then asked why DEFENDANT DETECTIVE RUBINI was on the second floor attempting to break into one of the rooms and further asked if the DEFENDANTS had a warrant to be in his home.

44.    One of the DEFENDANT DETECTIVES responded by saying "What officer? What warrant?" As the DEFENDANT DETECTIVE made that statement to Mr. Cipley Sr., DEFENDANT DETECTIVE RUBINI walked down the stairs and out of the front door.

45.    After DEFENDANT DETECTIVE RUBINI exited PLAINTIFF's home, the DEFENDANT DETECTIVES picked PLAINTIFF off of the floor and attempted to force PLAINTIFF to stand up.

46.    The DEFENDANT DETECTIVES, instead, then forcefully dragged PLAINTIFF from the floor of her home, past the stoop of her home and across the concrete steps to their police vehicle.

47.    As PLAINTIFF was placed in front of the police vehicle, PLAINTIFF pleaded to retrieve a jacket and shoes. When the DEFENDANT DETECTIVES arrived at PLAINTIFF's home, she was wearing pajama pants, a tank top without a bra and did not have any shoes on. The DEFENDANT DETECTIVES intentionally prevented PLAINTIFF from getting any clothing in an effort to embarrass, and humiliate PLAINTIFF. The DEFENDANT DETECTIVE's refusal also subjected PLAINTIFF to the harsh and cold temperatures as the incident occurred in the winter.

48.    In the course of being slammed onto the floor by the DEFENDANT DETECTIVES, PLAINTIFF, in fear for her life, urinated on herself. PLAINTIFF's urine subsequently spread

10

throughout her pajama pants and shirt as a result of being forced to remain in a prone position on the floor by the DEFENDANT DETECTIVES.

49.     When PLAINTIFF was placed in front of the DEFENDANT's police vehicle, the DEFENDANT DETECTIVES visibly observed PLAINTIFF's urine soaked clothing. Instead of allowing PLAINTIFF to change her clothing, the DEFENDANTS laid a piece of cardboard on the backseat of the vehicle and instructed PLAINTIFF to sit on it. PLAINTIFF further pleaded with the DEFENDANT DETECTIVES for an opportunity to retrieve a change of clothing and shoes, as she was barefoot at the time of her arrest. All of PLAINTIFF's requests were outright denied and ignored by the DEFENDANT DETECTIVES.

50.     Moreover, at no time was PLAINTIFF ever read her Miranda Rights, told the basis for her arrest, nor did the DEFENDANT DETECTIVES take PLAINTIFF's pedigree. Rather, the DEFENDANT DETECTIVES told PLAINTIFF that "it could all be over" if she co-operated and told them where Mr. Cipley Jr. was located. PLAINTIFF insisted that she did not know Mr. Cipley Jr.'s whereabouts and that he was not at PLAINTIFF's home.

51.     While PLAINTIFF was in the police vehicle, she requested to be taken to the hospital due to the extreme pain that she was in as a result of being attacked and brutalized by the DEFENDANT DETECTIVES. The DEFENDANT DETECTIVES denied her request and drove PLAINTIFF to the Second Precinct to be processed.

52.     When PLAINTIFF arrived at the Second Precinct, a Nassau County Police Medic examined PLAINTIFF and told the DEFENDANT DETECTIVES that she needed to be transported to NUMC via ambulance due to the extent of her injuries.

53.     Upon arriving at NUMC, the DEFENDANT DETECTIVES were asked, by an NUMC Nurse, to identify the PLAINTIFF. The DEFENDANT DETECTIVES admitted to the Nurse that they did not know the PLAINTIFF's identity.

54.     After PLAINTIFF was checked into the hospital, she was placed in the custody of Nassau County Police Officer Timothy Fagan (hereinafter "PO Fagan") and another Nassau County Police Officer whose identity is presently unknown to PLAINTIFF. While there, the attending NUMC Nurse gave PLAINTIFF a paper top and pants to wear as she was still covered in her own urine.

55.     PLAINTIFF was then examined by the attending Nurse and given an x-ray of her left arm which was swollen and bruised at the time. Notwithstanding the fact that PLAINTIFF also sustained injuries to her shoulder, the DEFENDANT DETECTIVES directed the attending Nurse to only x-ray the injuries to PLAINTIFF's arm. As a result of the DEFENDANT DETECTIVES' directive, the Nurse never examined the injuries to PLAINTIFF's shoulders. The NUMC examination report, therefore, does not indicate any information regarding PLAINTIFF's injuries to her shoulder.

56.     After PLAINTIFF was evaluated by the NUMC physician, she was transported from the hospital and back to the Second Precinct by PO Fagan and his partner and placed back in the custody of the DEFENDANT DETECTIVES.

57.     PLAINTIFF was then placed into an office and handcuffed to a bench for approximately four to five hours. At approximately 6:00 P.M., PLAINTIFF was transported back to NUMC because she was not provided her prescribed medication for her diabetes. The DEFENDANT DETECTIVES refused to allow PLAINTIFF to retrieve the medication from her

12

home and instead insisted that PLAINTIFF be required to take a shot of insulin while at the hospital.

58.　　PLAINTIFF objected to taking the insulin shot because PLAINTIFF was specifically prescribed glumetza, which is a type of metformin that is specific to PLAINTIFF's needs to treat her diabetes. PLAINTIFF emphatically objected to taking an insulin shot because it would interfere with her regularly prescribed treatment. Thereafter, PLAINTIFF was only provided a substitute for her regular medication only after she persistently made her objections known.

59.　　After PLAINTIFF was released from NUMC for a second time, she was then transported to the police headquarters in Mineola for the duration of the night. The following morning, on March 13, 2019, PLAINTIFF was arraigned on one count of Assault in the Second Degree - with intent to cause injury to a Police Officer, in violation of PL120.05 and one count of Resisting Arrest, in violation of PL 205.30.

60.　　This was the first time that PLAINTIFF was made aware of the false charges being brought against her.

61.　　PLAINTIFF was granted a conditional release after PLAINTIFF's then criminal attorney Ms. Zeena Abdi requested that the Court read the Crime Report written by DEFENDANT DETECTIVE MAZZARA on March 12, 2019. Thereafter, PLAINTIFF was required to report to probation after being released.

62.　　The report stated, in part:

On March 12, 2019 at about 1320 hours detectives responded to 134 Milton Ave, Levittown in an attempt to locate James Cipley wanted for a domestic incident (2019CR317136). Detectives were advised by the victim in that case that Cipley was likely at that location as his parents lived there. Upon detective's arrival, Cipley's vehicle was parked in front of the location curbside. As he had previously fought officers, resisted arrest, and escaped from custody, detectives positioned themselves around the residence to prevent Cipley's flight. Detective Mazzara who was dressed in a raid jacket with the lettering "Police" and Nassau County Police patches on each

13

shoulder and shield clearly displayed, knocked at the residence door and was greeted by the female suspect now known as Donna Cipley. She was immediately abusive with Detectives and demanded to know why they were there. The suspect was asked if James Cipley was at home. The suspect began to scream and curse at the detectives and was verbally abusive. The suspect exited the residence and began to scream obscenities at maximum volume. She told officers that she did not call the police and to "get the fuck off her property." the suspect then went back to the front door of her residence and intentionally bumped it into Detective Gomez who was standing just beside it. Detective Gomez asked the suspect why she had done that and she scowled at him and then intentionally and forcefully swung the door open into Detective Gomez body with great force. The suspect then attempted to flee inside the residence and slam the door on Detective Gomez, but was followed inside in an attempt to effectuate an arrest. The suspect was repeatedly advised she was under arrest, but failed to comply and began to forcefully swing her arms and legs at officers refusing to be restrained. The suspect grabbed the right thumb of Detective Gomez and bent it back as detectives attempted to place her under arrest. After a brief struggle with multiple detectives, the suspect was eventually placed into custody and handcuffed. [...] The defendant Donna Cipley was transported to the Second Precinct for arrest processing in rmp 1223. During the transport she continually screamed at maximum volume at officers, lifted her legs up against the rmp window, and feigned medical distress. After arrival at the precinct she had to be partially carried up the steps and refused to give any information including her name. An ambulance was requested and the defendant transported to NUMC in 2352 for evaluation and treatment. The defendant was examined, found fit for confinement, and returned to the precinct for processing. She was continually uncooperative with officers and spit at officers while walking past.

63.     Notwithstanding the alleged false charges brought against PLAINTIFF, the DEFENDANT DETECTIVES, upon information and belief, falsely informed reporters from the Channel 12 News outlet that the DETECTIVES went to PLAINTIFF's home to arrest her for a criminal contempt charge.

64.     Due to PLAINTIFF's false arrest and the allegations made against her, the Channel 12 News outlet falsely reported that PLAINTIFF assaulted DEFENDANT DETECTIVE GOMEZ by slamming a door on his hand and moreover, that PLAINTIFF was the subject of an open criminal contempt charge which was the basis for the DEFENDANT DETECTIVES being at her residence on March 12, 2019. At no point, however, was PLAINTIFF ever the subject of a criminal

14

contempt charge. Such statements were patently false.

65.    Moreover, the DEFENDANT DETECTIVES invented and fabricated circumstances which were used to support the false charges in the charging instrument that was used to prosecute PLAINTIFF by the Nassau County District Attorney's Office. The falsehoods which were included in the charging instrument are provided, *inter alia*, below:

   •    The suspect then went back to the front door of her residence and intentionally bumped into Detective Gomez who was standing just beside it.

   •    Detective Gomez asked the suspect why she had done that and she scowled at him and then intentionally and forcefully swung the door open into Detective Gomez body with great force.

   •    The suspect then attempted to flee inside the residence and slam the the door on Detective Gomez, but was followed inside in an attempt to effectuate an arrest.

   •    The suspect grabbed the right thumb of Detective Gomez and bent it back as detectives attempted to place [PLAINTIFF CIPLEY] under arrest.

   •    [Plaintiff CIPLEY] was continually uncooperative with officers and spit at officers while walking past.

66.    DEFENDANT DETECTIVES created and fabricated each and every one of the aforementioned allegations against PLAINTIFF in an effort to substantiate the unlawful arrest.

67.    Contrary to DEFENDANT DETECTIVES' statement(s) to the News 12 Channel reporters, PLAINTIFF was charged with Assault in the 2nd Degree with the intent to cause physical injury to a Police Officer in violation of PL 120.05 03 and with an additional charge of Resisting Arrest, in violation of PL 205.30.

68.    Approximately two weeks following PLAINTIFF's wrongful arrest, uniformed Police Officers arrived at her home because of an alleged 911 phone call. However, as soon as Plaintiff began to film the encounter, said Officers left her residence. Upon information and belief,

15

the alleged 911 call was, however, a transparent pretext for the DEFENDANTS to continue to harass PLAINTIFF and Mr. Cipley Sr. at PLAINTIFF's residence.

69.     Notwithstanding PLAINTIFF CIPLEY's arrest, on October 8, 2019, the Honorable David Goodsell, of the First District Criminal Term, dismissed all of the allegations made against PLAINTIFF CIPLEY and determined that the accusatory instrument was facially insufficient. All charges brought against Plaintiff have since been dismissed.

## AS AND FOR A FIRST COUNT
## 42U.S.C. § 1983 - FALSE ARREST AND UNLAWFUL SEARCH & SEIZURE
### *(Against All DEFENDANTS)*

70.     The PLAINTIFF repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 69 of this *Complaint* with the same force and effect as though fully set forth herein.

71.     On March 12, 2019, at about 1:30 P.M., the DEFENDANT DETECTIVES arrived at PLAINTIFF's home without a search warrant, probable cause to arrest PLAINTIFF or any legal justification for their presence at her home. PLAINTIFF CIPLEY at no point prior thereto had a criminal record, criminal convictions, nor was the subject of any criminal contempt order.

72.     On said date, the DEFENDANT DETECTIVES surrounded the perimeter of PLAINTIFF's home, knocked on her door, and questioned PLAINTIFF as to the whereabouts of her son James Cipley Jr. At no point on March 12, 2019 or prior thereto was PLAINTIFF ever the subject of an investigation, nor was she ever suspected to have committed a crime. Moreover, PLAINTIFF was neither in the process of committing a crime, contrary to the bold lies and fabrications told by the DEFENDANT DETECTIVES.

16

73.     To be clear, PLAINTIFF was never the subject of a contempt order which is contrary to bold lie that the DEFENDANT DETECTIVES told to reporters from various news outlets including Channel 12 news among others.

74.     Rather, PLAINTIFF was placed in fear of her life, falsely seized from her home, falsely detained and falsely arrested and held against her will without justification for such detention by DEFENDANT DETECTIVES, and subjected to an unlawful and warrantless search of her home.

75.     PLAINTIFF was slammed onto the floor of her home by the DEFENDANT DETECTIVES, handcuffed, dragged onto the ground outside of her home and taken to the Second Precinct where she was held against her will. The DEFENDANT DETECTIVES' actions of dragging PLAINTIFF out of her home were committed with the intention of confining arresting and confining PLAINTIFF.

76.     During the commission of the false arrest by the DEFENDANT DETECTIVES, DEFENDANT DETECTIVE RUBINI further violated PLAINTIFF's constitutional rights by engaging in an unlawful warrantless search of PLAINTIFF's home when he entered the home and then ran up the staircase in PLAINTIFF's home brandishing a knife and attempted to pry open various doors in PLAINTIFF's home. The search of PLAINTIFF's home was, by no means authorized, supported by probable cause and was performed outside the bounds of the law. At no point, did PLAINTIFF or Mr. Cipley Sr. consent to or give permission to the DEFENDANT DETECTIVES to enter their property, the confines of their home nor any room therein.

77.     Notwithstanding the warrantless and unjustifiable search perpetrated by the DETECTIVE DEFENDANTS, there was no evidence of any illegality recovered in Plaintiff's home

17

to justify the wrongful entry into her home.

78.     Moreover, at all times as PLAINTIFF was being confined by the DEFENDANT DETECTIVES, PLAINTIFF was conscious, aware and did not consent to being confined. Moreover, PLAINTIFF's confinement was not privileged in any way.

79.     As a result of the false arrest, detention, and accusations, the DEFENDANT DETECTIVES took an active role in creating and manufacturing the allegations made against PLAINTIFF due to the DEFENDANT DETECTIVE's desire to harass PLAINTIFF, Mr. Cipley Jr. and PLAINTIFF's family.

80.     As part of the false arrest, detention, and accusations, the DEFENDANT DETECTIVES caused PLAINTIFF to be seized, arrested, held in a dangerous, and compromising position for an unreasonable amount of time without probable cause, and caused MS. CIPLEY to be deprived of her liberty, without due process and was further exposed to disgrace, public humiliation and embarrassment.

81.     The DEFENDANT DETECTIVES knew at the time of PLAINTIFF's arrest, and at all times since then, that they were not in possession of any evidence consistent with and sufficient to establish any allegations against PLAINTIFF and was based solely, or in part, on the false and fabricated claims asserted within the charging instrument that was produced by DEFENDANT DETECTIVE MAZZARA.

82.     Each of the DEFENDANTS acting under color of law, acted separately and in concert and without authorization of law. Each of the DEFENDANT DETECTIVES, separately and in concert with each other, acted willfully, knowingly and purposefully with the specific intent to deprive PLAINTIFF of her right to freedom from excessive force, illegal seizure of her person,

18

freedom from illegal detention, and imprisonment. In addition, the DEFENDANT DETECTIVES acted in an effort to justify their unjustifiable actions by creating false and fabricated claims against PLAINTIFF. All of these rights are secured to PLAINTIFF by the provisions of the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States, the Fourth Amendment, as well as the other aspects of the Fourteenth Amendment and by 42 U.S.C. § 1983.

83.    The DEFENDANT DETECTIVES falsely arrested, falsely imprisoned, abused, detained, coerced, threatened, and intimidated PLAINTIFF, and further denied PLAINTIFF her right to be free from unreasonable search and seizure. The DEFENDANT DETECTIVES knew or should have known that they were violating the laws of the State of New York and those statutory and constitutional rights set forth herein which caused harm to PLAINTIFF.

84.    As a direct and proximate result of the aforesaid acts of the DEFENDANT DETECTIVES, PLAINTIFF suffered great physical harm, mental anguish and violations of her rights from then until now and she will continue to suffer in the future, having been greatly humiliated and mentally injured, as a result of the foregoing acts of the DEFENDANTS.

85.    PLAINTIFF was forced to incur great expense due to the filing of this false and malicious criminal complaint, for attorney's fees and other expenses in combating the charges and seeking to clear her name against the unfounded and unwarranted allegations by the DEFENDANTS, which have been a serious burden on PLAINTIFF.

86.    As a direct consequence of the actions of the Collective Defendants, PLAINTIFF suffered loss of standing in the community, loss of time, loss of freedom, loss of quality of life, and damage to name and reputation, special damages, attorney's fees, incidental fees/costs, loss of property and other financial impairments.

19

87. That by reason of the foregoing, PLAINTIFF suffered and continues to suffer irreparable injury and monetary damages, in excess of FIVE MILLION (5,000,000.00) DOLLARS, as well as punitive damages, costs and attorney's fees, and any other relief this Court may find just and proper.

## AS AND FOR A SECOND COUNT
### U.S.C. § 1983 - EXCESSIVE FORCE
*(Against All DEFENDANTS)*

88. The PLAINTIFF repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 87 of this *Complaint* with the same force and effect as though fully set forth herein.

89. On March 12, 2019, at approximately 1:30 P.M., PLAINTIFF was in her home and on the phone tending to a personal matter. At no point prior thereto was PLAINTIFF engaged in or suspected of any involvement in criminal activity nor was PLAINTIFF the subject of a criminal contempt order as falsely stated by the DEFENDANT DETECTIVES.

90. At that time, the DEFENDANT DETECTIVES made an unsolicited and warrantless search of PLAINTIFF's home. Upon information and belief, DEFENDANT DETECTIVE GOMEZ knocked on PLAINTIFF's front door without announcing himself as a Nassau County police officer.

91. Unbeknownst to PLAINTIFF when the DEFENDANT DETECTIVES arrived, she mistakenly confused DEFENDANT DETECTIVE GOMEZ for her brother-in-law. As PLAINTIFF opened her front door, she immediately observed two of the DEFENDANT DETECTIVES run down both sides of her home in the direction of her backyard. PLAINTIFF, in shock from their presence, asked the DEFENDANT DETECTIVES for the purpose of their unsolicited and warrantless home visit. In response, DEFENDANT DETECTIVE GOMEZ told PLAINTIFF, "[d]on't worry about it.

We can do whatever we want."

92.    PLAINTIFF again asked DEFENDANT DETECTIVE GOMEZ what the Officers were doing at her home, and DEFENDANT GOMEZ responded that they were looking for Mr. Cipley Jr. and that they saw his vehicle outside of PLAINTIFF's home.

93.    PLAINTIFF then responded to DEFENDANT DETECTIVES by telling them that Mr. Cipley Jr. was not at their home and that the purported vehicle belonged to Mr. Cipley Jr.'s girlfriend, Ms. LaBella.

94.    As PLAINTIFF stood at the storm door of her home, with telephone in hand, approximately six or more DEFENDANT DETECTIVES aggressively approached the front door. PLAINTIFF then began to walk in a backward direction in an effort to go back inside. When PLAINTIFF extended her hand to close her storm door, approximately two DEFENDANT DETECTIVES grabbed onto the screen door to prevent PLAINTIFF from closing it.

95.    PLAINTIFF then requested that the DEFENDANT DETECTIVES leave her property and thereafter attempted to close her front door. DEFENDANT DETECTIVE GOMEZ, in an effort to stop PLAINTIFF, intentionally placed his hand in the path of the door and as a result, the door made contact with his hand.

96.    DEFENDANT DETECTIVE GOMEZ then yelled out to the other DEFENDANT DETECTIVES, "that's it - it's a go, it's a go! She attacked me!" The DEFENDANT DETECTIVES then immediately burst into PLAINTIFF'S front door and charged into the home.

97.    DEFENDANT DETECTIVES then grabbed PLAINTIFF and threw PLAINTIFF and her telephone, onto the ground and jumped on her back. The DEFENDANT DETECTIVES subjected PLAINTIFF to unreasonable force in light of the fact that at the time, attacked and

21

brutalized PLAINTIFF without any legal justification as she had not posed any threat to any of the DEFENDANT DETECTIVES, nor had she broken any laws. PLAINTIFF, in shock from DEFENDANTS' actions, began to struggle and scream out to her husband, James Cipley, Sr. for help.

98.     PLAINTIFF pleaded to the DEFENDANT DETECTIVES to get off of her and yelled out that she was recovering from a surgical operation on her kidney. PLAINTIFF, through her numerous pleas, gave the DEFENDANT DETECTIVES adequate notice that they were placing her at risk of physical harm by the use of such force.

99.     The DEFENDANT DETECTIVES ignored and recklessly disregarded PLAINTIFF's pleas and instead held her down while one DEFENDANT DETECTIVE stood on her hair, another DEFENDANT DETECTIVE pressed his foot down on PLAINTIFF's right ankle and with a third DEFENDANT DETECTIVE placing a knee into PLAINTIFF's back and applying pressure to her recovering kidney. The DEFENDANT DETECTIVES then forced PLAINTIFF's arms behind her back and place handcuffs on her wrists.

100.    PLAINTIFF yelled out "[y]ou're killing me!" and continued to plead to the DEFENDANT DETECTIVES to get off of her. However, the DEFENDANT DETECTIVES continued to ignore PLAINTIFF and remained hovering over her body. At no point did any of the DEFENDANT DETECTIVES take any reasonable measures to minimize the risks to PLAINTIFF's physical well-being. DEFENDANT DETECTIVES had no legal justification for using **any** force against PLAINTIFF.

101.    The DEFENDANT DETECTIVES forcefully dragged PLAINTIFF from the floor of her home, past the stoop of her home and across the concrete steps to their police vehicle.

102.     Each and every one of the DEFENDANT DETECTIVES knew that using said force on PLAINTIFF was unlawful and without legal justification and subjected her to a risk of harm because PLAINTIFF loudly exclaimed that she was in pain and that she had recently undergone surgery. Moreover, the DEFENDANT DETECTIVES acted recklessly by disregarding PLAINTIFF's pleas for help. At no point did any of the DEFENDANT DETECTIVES take reasonable measures to minimize the risk to PLAINTIFF when they dragged her out of her home. Nor at any time did DEFENDANT DETECTIVES have any legal justification to use **any** force against PLAINTIFF.

103.     The DEFENDANT DETECTIVES' act of slamming PLAINTIFF onto the ground, jumping on top of her and dragging her out of her home caused PLAINTIFF to suffer severe pain, swelling to her arms, shoulders, and upper torso. Moreover, PLAINTIFF was also subjected to severe emotional harm as she believed that she would be killed as a result of the DEFENDANT DETECTIVES' actions.

104.     Each of the DEFENDANT DETECTIVES acting under color of law, acted separately and in concert and without authorization of law. Each of the DEFENDANT DETECTIVES, separately and in concert with each other, acted willfully, knowingly and purposefully with the specific intent to deprive PLAINTIFF of her right to freedom from excessive force, freedom from illegal detention, and imprisonment. All of these rights are secured to PLAINTIFF by the provisions of the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States, the Fourth Amendment, as well as the Equal Protection clause of the Fourteenth Amendment and by 42 U.S.C. § 1983.

105.     As a direct consequence of the actions of the DEFENDANT DETECTIVES, PLAINTIFF suffered loss of standing in the community, loss of time, loss of freedom, loss of quality

of life, damage to her name and reputation, special damages, attorney's fees, incidental fees/costs, loss of property and other financial impairments.

106.    That by reason of the foregoing, PLAINTIFF suffered and continues to suffer irreparable injury and monetary damages, in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

## AS AND FOR A THIRD COUNT
## 42 U.S.C. § 1983 - FAILURE TO INTERVENE
### *(Against All DEFENDANT DETECTIVES)*

107.    The PLAINTIFF repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 106 of this *Complaint* with the same force and effect as though fully set forth herein.

108.    On March 12, 2019, at about 1:30 P.M., PLAINTIFF was subjected to excessive and unreasonable force and a warrantless search and seizure of PLAINTIFF's person and home at the hands of the DEFENDANT DETECTIVES.

109.    At the time of the DEFENDANT DETECTIVES arrival to PLAINTIFF's home, she was on the phone tending to an unrelated matter. Upon information and belief, DEFENDANT DETECTIVE GOMEZ knocked on PLAINTIFF's front door without announcing himself as a Nassau County police officer. At no point prior thereto was PLAINTIFF engaged in or suspected of any involvement in criminal activity nor was PLAINTIFF the subject of a criminal contempt order as falsely stated by the DEFENDANT DETECTIVES. DEFENDANT DETECTIVES did not possess a warrant to search PLAINTIFF's home.

24

110.    Unbeknownst to PLAINTIFF when the DEFENDANT DETECTIVES arrived, she mistakenly confused DEFENDANT DETECTIVE GOMEZ for her brother-in-law. As PLAINTIFF opened her front door, she immediately observed two of the DEFENDANT DETECTIVES run down both sides of her home in the direction of her backyard. PLAINTIFF, in shock from their presence, asked the DEFENDANT DETECTIVES for the purpose of their unsolicited home visit. In response, DEFENDANT DETECTIVE GOMEZ told PLAINTIFF, "[d]on't worry about it. We can do whatever we want."

111.    PLAINTIFF again asked DEFENDANT DETECTIVE GOMEZ what the officers were doing at her home, and DEFENDANT GOMEZ responded that they were looking for Mr. Cipley Jr. and that they saw his vehicle outside of PLAINTIFF's home.

112.    PLAINTIFF then responded to DEFENDANT DETECTIVES by telling them that Mr. Cipley Jr. was not at their home and that the purported vehicle belonged to Mr. Cipley's girlfriend, Ms. LaBella.

113.    As PLAINTIFF stood at the storm door of her home, with telephone in hand, approximately six or more DEFENDANT DETECTIVES aggressively approached the front door. PLAINTIFF then began to walk in a backward direction in an effort to go back inside. When PLAINTIFF extended her hand to close her storm door, approximately two DEFENDANT DETECTIVES grabbed onto the screen door to prevent PLAINTIFF from closing it.

114.    PLAINTIFF then requested that the DEFENDANT DETECTIVES leave her property and thereafter attempted to close her front door. DEFENDANT DETECTIVE GOMEZ, in an effort to stop PLAINTIFF, intentionally placed his hand in the path of the door and as a result, the door made contact with his hand. At no time did PLAINTIFF give DEFENDANT DETECTIVES

permission to enter her home.

115.    DEFENDANT DETECTIVE GOMEZ then yelled out to the other DEFENDANT DETECTIVES, "that's it - it's a go, it's a go! She attacked me!" The DEFENDANT DETECTIVES then immediately burst into PLAINTIFF'S front door and charged into the home without a warrant and without legal justification. PLAINTIFF at no point consented to a search of her home or gave DEFENDANTS permission to enter her home.

116.    DEFENDANT DETECTIVES then grabbed PLAINTIFF and threw PLAINTIFF and her telephone, onto the ground and jumped on her back. The DEFENDANT DETECTIVES subjected PLAINTIFF to unreasonable force in light of the fact that at no time, PLAINTIFF posed any threat to any of the DEFENDANT DETECTIVES, nor had she broken any laws. PLAINTIFF, in shock from DEFENDANTS' actions, began to struggle and scream out to her husband, James Cipley, Sr. for help.

117.    PLAINTIFF pleaded with the DEFENDANT DETECTIVES to get off of her and yelled out that she was recovering from a surgical operation on her kidney.

118.    The DEFENDANT DETECTIVES ignored PLAINTIFF and instead held her down while one DEFENDANT DETECTIVE stood on her hair, another DEFENDANT DETECTIVE pressed his foot down on PLAINTIFF'S right ankle and with a third DEFENDANT DETECTIVE placing a knee into PLAINTIFF'S back and applying pressure to PLAINTIFF's recovering kidney. The DEFENDANT DETECTIVES then forced PLAINTIFF's arms behind her back and placed handcuffs on her wrists. DEFENDANT DETECTIVES had no legal justification to arrest PLAINTIFF.

119.   PLAINTIFF yelled out "[y]ou're killing me!" and continued to plead to the DEFENDANT DETECTIVES to get off of her. However, the DEFENDANT DETECTIVES continued to ignore PLAINTIFF and remained hovering over her body.

120.   The DEFENDANT DETECTIVES forcefully dragged PLAINTIFF from the floor of her home, past the stoop of her home and across the concrete steps to their police vehicle.

121.   The DEFENDANT DETECTIVES knew or and deliberately ignored the fact that the false accusations, detainment, false arrest, seizure, illegal search of PLAINTIFF's home, and excessive force used on PLAINTIFF violated the rights guaranteed to PLAINTIFF under the First, Fourth, Fifth and Fourteenth Amendment and 42 U.S.C. § 1983.

122.   Each of the said DEFENDANT DETECTIVES had the authority, ability and concurrent duty under 42 U.S.C. § 1983 to prevent the false arrest, wrongful detainment, illegal search of PLAINTIFF's home and excessive force against PLAINTIFF, yet neglected to prevent said violations from occurring, and further failed to intervene to protect or aid the PLAINTIFF when such violations did, in fact, occur.

123.   Specifically, each and every one of the DEFENDANT DETECTIVES had the opportunity and responsibility to prevent the wrongful detainment, and abuse of process against PLAINTIFF because each DEFENDANT DETECTIVE had actual notice of the wrongful actions of the other DEFENDANT DETECTIVES at the scene of the incident.

124.   The DEFENDANT DETECTIVES had the power to prevent the continued due process violations against PLAINTIFF, yet failed to prevent or dismiss the fabricated charges against PLAINTIFF, or to protect PLAINTIFF from the unwarranted penalties that followed from the charges against her.

125. As a direct consequence of the actions of the DEFENDANT DETECTIVES acting in furtherance of their duties as agents of NASSAU COUNTY and the NASSAU COUNTY POLICE DEPARTMENT, PLAINTIFF suffered injuries, including but not limited to, stigmatization, embarrassment, loss of liberty and the infringement of her rights guaranteed to her under the U.S. Constitution.

126. As a direct consequence of the actions of the DEFENDANT DETECTIVES, PLAINTIFF suffered loss of standing in the community, loss of time, loss of freedom, loss of quality of life, damage to her name and reputation, special damages, attorney's fees, incidental fees/costs, loss of property and other financial impairments.

127. That by reason of the foregoing, PLAINTIFF suffered and continues to suffer irreparable injury and monetary damages, in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

## AS AND FOR A FOURTH COUNT
### 42 U.S.C. § 1983 - MALICIOUS PROSECUTION

128. The PLAINTIFF repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 127 of this *Complaint* with the same force and effect as though fully set forth herein.

129. The DEFENDANT DETECTIVES' commencement and continuation of a criminal proceeding against PLAINTIFF by the lodging of false charges, wrongful arrest, and abuse of process culminated into the unjustifiable and malicious prosecution of PLAINTIFF by the DEFENDANT NASSAU COUNTY DISTRICT ATTORNEY OFFICE. The DEFENDANT DETECTIVES provided false and fabricated information which was used by an Assistant District Attorney of the

Nassau County District Attorney's Office to prosecute PLAINTIFF for erroneous and unsubstantiated charges. The DEFENDANT DETECTIVES provided the Assistant District Attorney with false information, and knew that said information would be used to prosecute Plaintiff. The DEFENDANT DETECTIVES' actions constituted unreasonable and unlawful behavior as well as abuse of process, abuse of authority, and violations of the Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights. As a result of the DEFENDANT DETECTIVES' actions, the DEFENDANT NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE conducted said proceedings against PLAINTIFF based on the false and fabricated evidence. The DEFENDANT DETECTIVES therefore caused the DEFENDANT NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE to breach their duty under 42 U.S.C. § 1986 to prevent the commission of the civil rights violations perpetrated against PLAINTIFF including violations of 42 U.S.C. §1983.

130.    The false and fabricated allegations made against PLAINTIFF were dismissed in PLAINTIFF'S favor in their entirety by the Honorable David Goodsell, of the First District Criminal Term and the proceedings against PLAINTIFF, which were perpetrated by the DEFENDANT NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE were terminated on October 8, 2019.

131.    Said abuse of process was continued by the DEFENDANT NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE'S failure to adequately investigate and properly discipline the DEFENDANT DETECTIVES for their actions against the PLAINTIFF. Specifically, the DEFENDANT NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE failed to investigate and verify the veracity of the charges brought against PLAINTIFF, despite the blatant lack of any probable cause for falsely accusing PLAINTIFF. Rather, the false and fabricated allegations made against PLAINTIFF were based on actual malice harbored by the DEFENDANT DETECTIVES and

29

prosecuted on their behalf by the DEFENDANT NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE. Each knew that the charges were false and only sought to press the charges to mask and coverup the abuses, violations and wrongful acts which they had taken against PLAINTIFF.

132.     The action taken by the DEFENDANT DETECTIVES to create a false narrative; falsely accuse Plaintiff; provide false information to the Nassau County District Attorney's Office; falsely report to the Channel 7 News outlet that Plaintiff was the subject of a criminal contempt order; maliciously prosecute; harass; and fully inconvenience the PLAINTIFF with false criminal charges is an abuse of process, in that using the courts and judicial process to harass, intimidate, inconvenience and further damage the PLAINTIFF despite no significant evidence for prosecuting the baseless charges.

133.     As of the filing of this Complaint, the charges against PLAINTIFF have been dismissed after months of PLAINTIFF maintaining her innocence.

134.     As a result of said abuse of process, PLAINTIFF has suffered continued emotional damage, including prolonged stress and anxiety, fear, and frustration, and has been harmed monetarily in her incurring of attorney fees, and other expenses incurred in the attempt to clear the PLAINTIFF from these false and maliciously imposed criminal charges.

135.     That by reason of the foregoing, PLAINTIFF suffered and continues to suffer irreparable injury and monetary damages, in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

## AS AND FOR A FIFTH COUNT
## 42 U.S.C. § 1983 - ABUSE OF PROCESS

136.     The PLAINTIFF repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 135 of this *Complaint* with the same force and effect as though fully set forth herein.

137.     The DEFENDANT DETECTIVES intentionally, recklessly and maliciously filed and/or caused to be filed, a false, inaccurate, and/or misleading criminal complaint against PLAINTIFF.

138.     The false criminal complaint lodged by DEFENDANT DETECTIVES against PLAINTIFF was done with knowledge that the facts contained therein were false, misleading and/or otherwise inaccurate.

139.     The DEFENDANT DETECTIVES filed said false criminal complaint against PLAINTIFF with an ulterior purpose/motive to subject Plaintiff to punishment without just cause.

140.     The DEFENDANT DETECTIVES subjected PLAINTIFF to the criminal justice system without just cause or reason. The DEFENDANT DETECTIVES abused the criminal justice system in falsely arresting, falsely charging, and falsely prosecuting Ms. Cipley in an attempt to satisfy their personal goals of covering up their wrongdoing and to further their own purposes of exercising their privilege for their own warped sense of power.

141.     The DEFENDANT DETECTIVES created false and fabricated statements which included, *inter alia*, the following complaints:

On March 12, 2019 at about 1320 hours detectives responded to 134 Milton Ave, Levittown in an attempt to locate James Cipley wanted for a domestic incident (2019CR317136). Detectives were advised by the victim in that case that Cipley was likely at that location as his parents lived there. Upon detective's arrival, Cipley's vehicle was parked in front of the location curbside. As he had previously fought

31

officers, resisted arrest, and escaped from custody, detectives positioned themselves around the residence to prevent Cipley's flight. Detective Mazzara who was dressed in a raid jacket with the lettering "Police" and Nassau County Police patches on each shoulder and shield clearly displayed, knocked at the residence door and was greeted by the female suspect now known as Donna Cipley. She was immediately abusive with Detectives and demanded to know why they were there. The suspect was asked if James Cipley was at home. The suspect began to scream and curse at the detectives and was verbally abusive. The suspect exited the residence and began to scream obscenities at maximum volume. She told officers that she did not call the police and to "get the fuck off her property." the suspect then went back to the front door of her residence and intentionally bumped it into Detective Gomez who was standing just beside it. Detective Gomez asked the suspect why she had done that and she scowled at him and then intentionally and forcefully swung the door open into Detective Gomez body with great force. The suspect then attempted to flee inside the residence and slam the door on Detective Gomez, but was followed inside in an attempt to effectuate an arrest. The suspect was repeatedly advised she was under arrest, but failed to comply and began to forcefully swing her arms and legs at officers refusing to be restrained. The suspect grabbed the right thumb of Detective Gomez and bent it back as detectives attempted to place her under arrest. After a brief struggle with multiple detectives, the suspect was eventually placed into custody and handcuffed. [...] The defendant Donna Cipley was transported to the Second Precinct for arrest processing in rmp 1223. During the transport she continually screamed at maximum volume at officers, lifted her legs up against the rmp window, and feigned medical distress. After arrival at the precinct she had to be partially carried up the steps and refused to give any information including her name. An ambulance was requested and the defendant transported to NUMC in 2352 for evaluation and treatment. The defendant was examined, found fit for confinement, and returned to the precinct for processing. She was continually uncooperative with officers and spit at officers while walking past.

142.    Moreover, the DEFENDANT DETECTIVES invented and fabricated circumstances

which were used to support the false charges in the charging instrument that was used to prosecute

PLAINTIFF by the Nassau County District Attorney's Office. The falsehoods which were included

in the charging instrument are provided, included but were not limited to, *inter alia*, the statements

below:

•    The suspect then went back to the front door of her residence and intentionally bumped into Detective Gomez who was standing just beside it.

•    Detective Gomez asked the suspect why she had done that and she scowled at him and then intentionally and forcefully swung the door open into

32

Detective Gomez body with great force.

• The suspect then attempted to flee inside the residence and slam the door on Detective Gomez, but was followed inside in an attempt to effectuate an arrest.

• The suspect grabbed the right thumb of Detective Gomez and bent it back as detectives attempted to place [PLAINTIFF CIPLEY] under arrest.

• [Plaintiff CIPLEY] was continually uncooperative with officers and spit at officers while walking past.

143. DEFENDANT DETECTIVES' use of criminal process for the aforementioned improper purpose amounted to an abuse of said process, which was initiated and used to the detriment of PLAINTIFF solely for a purpose that was/is outside the legitimate ends of the legal process. The purpose behind the DEFENDANT DETECTIVES' actions was to harass PLAINTIFF because her son, James Cipley Jr. refused to be a confidential informant and to coerce him into assuming the role.

144. The DEFENDANT DETECTIVES did not initiate the arrest and prosecution of PLAINTIFF as a result of actual knowledge that a crime was committed. The DEFENDANT DETECTIVES' clear intention was to falsely arrest, and falsely prosecute PLAINTIFF and cause harm to PLAINTIFF without proper motive, excuse, or justification of any kind.

145. The DEFENDANT DETECTIVES did nothing to stop the criminal proceedings which amounted to an abuse of said process, which was initiated and used to the detriment of PLAINTIFF solely for a purpose that was/is outside the legitimate ends of the criminal process.

146. As a direct consequence of the actions of the DEFENDANT DETECTIVES, acting in furtherance of their duty as agents of NASSAU COUNTY and the NASSAU COUNTY POLICE DEPARTMENT, PLAINTIFF suffered injuries, including but not limited to, stigmatization,

33

embarrassment, loss of liberty and the infringement of his rights guaranteed to her under the U.S. Constitution.

147. As a direct consequence of the actions of the DEFENDANT DETECTIVES, PLAINTIFF suffered loss of standing in the community, loss of time, loss of freedom, loss of quality of life, and loss of regular income, damage to name and reputation, special damage, attorney's fees, incidental fees/costs, loss of property and other financial impairments.

148. That by reason of the foregoing, PLAINTIFF suffered and continues to suffer irreparable injury and monetary damages, in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

## AS AND FOR A SIXTH COUNT
## 42 U.S.C. § 1983 - FABRICATION OF EVIDENCE

149. PLAINTIFF repeats and realleges each and every allegation contained in paragraphs 1 through 148 of this Compliant with the same force and effect as fully set forth herein.

150. The DEFENDANT DETECTIVES fabricated evidence against PLAINTIFF to deprive Plaintiff of her First, Fourth, Fifth and Fourteenth Amendment rights, and jointly caused such deprivation of rights by acting in concert to unlawfully charge PLAINTIFF with crimes that she did not commit.

151. Upon information and belief, the DEFENDANT DETECTIVES further deprived the PLAINTIFF of her due process rights specifically, by falsifying facts in the Felony Complaint filed against Ms. Cipley. In said charging instrument, which was prepared by DEFENDANT DETECTIVE MAZZARA, it states the following false information:

The suspect then went back to the front door of her

34

> residence and intentionally bumped into Detective
> Gomez who was standing just beside it.
>
> Detective Gomez asked the suspect why she had done
> that and she scowled at him and then intentionally and
> forcefully swung the door open into Detective Gomez
> body with great force.
>
> The suspect then attempted to flee inside the residence
> and slam the door on Detective Gomez, but was
> followed inside in an attempt to effectuate an arrest.
>
> The suspect grabbed the right thumb of Detective
> Gomez and bent it back as detectives attempted to
> place [PLAINTIFF CIPLEY] under arrest.
>
> [Plaintiff CIPLEY] was continually uncooperative
> with officers and spit at officers while walking past.

152.    All of the above factual allegations prepared by DEFENDANT DETECTIVE
MAZZARA are false. These false allegations, and others, led to the false arrest of PLAINTIFF,
PLAINTIFF being accused of crimes which she did not commit, and PLAINTIFF's false
prosecution. The DEFENDANT DETECTIVES' narration of the false and fabricated allegations
against PLAINTIFF were likely to influence a jury's decision if presented at trial. This information
was forwarded to an Assistant District Attorney for the DEFENDANT NASSAU COUNTY
DISTRICT ATTORNEY'S OFFICE with the intention of it to be used to unlawfully prosecute
PLAINTIFF. Moreover, the falsity of these allegations was evidenced by the dismissal of all charges
filed against PLAINTIFF on or about October 8, 2019.

153.    The actions by the DEFENDANT DETECTIVES denied PLAINTIFF her liberty and
due process rights. These rights are guaranteed to the PLAINTIFF under 42 U.S.C. § 1983, and the
First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

35

154. As a direct consequence of the actions of the DEFENDANT DETECTIVES, PLAINTIFF suffered loss of standing in the community, loss of time, loss of freedom, loss of quality of life, and loss of regular income, damage to her name and reputation, special damage, attorney's fees, incidental fees/costs, loss of property and other financial impairments.

155. The DEFENDANT DETECTIVES knew or should have known that the wrongful detainment, false arrest, wrongful imprisonment and excessive force used on Ms. Cipley violated the PLAINTIFF's rights, guaranteed to her under the Fourth, Fifth and Fourteenth Amendments and 42 U.S.C. § 1983.

156. The DEFENDANT DETECTIVES had the authority, ability and concurrent duty under 42 U.S.C. § 1983 to prevent the false arrest, wrongful detainment and excessive force used on the PLAINTIFF, yet these DEFENDANT DETECTIVES neglected to prevent said violations from occurring, and further failed to intervene to protect or aid the PLAINTIFF when such violations did in fact occur.

157. The DEFENDANT DETECTIVES knew or should have known that the fabricated accusations against, and excessive force used on Ms. Cipley were violative of her Fourth, Fifth and Fourteenth Amendment rights to due process, and were tantamount to the unfair treatment that he suffered at the hands of each and every DEFENDANT DETECTIVE, in violation of the PLAINTIFF's fundamental rights under the Constitution.

158. As a direct consequence of the actions of the DEFENDANT DETECTIVES, PLAINTIFF suffered loss of standing in the community, loss of time, loss of freedom, loss of quality of life, and loss of regular income, damage to her name and reputation, special damage, attorney's fees, incidental fees/costs, loss of property and other financial impairments.

159.     That by reason of the foregoing, PLAINTIFF suffered and continues to suffer irreparable injury and monetary damages, in excess of FIVE MILLION ($5,000,000.00) DOLLARS, as well as punitive damages, costs and attorneys fees, and any other relief this Court may find just and proper.

**WHEREFORE**, Plaintiff demands judgment against Defendants:

a.     On the First Cause of Action in the sum in excess of five million ($5,000,000.00) dollars.

b.     On the Second Cause of Action in the sum in excess of five million ($5,000,000.00) dollars.

c.     On the Third Cause of Action in the sum in excess of five million ($5,000,000.00) dollars.

d.     On the Fourth Cause of Action in the sum in excess of five million ($5,000,000.00) dollars.

e.     On the Fifth Cause of Action in the sum in excess of five million ($5,000,000.00) dollars.

f.     On the Sixth Cause of Action in the sum in excess of five million ($5,000,000.00) dollars.

g.     Punitive damages in the amount in excess of twenty million ($10,000,000.00).

h.     Declaratory Judgment that DEFENDANTS willfully violated PLAINTIFF's rights secured by federal laws alleged herein.

I.     Injunctive relief, requiring DEFENDANTS to correct all past violations of federal law as alleged herein; to enjoin defendants from continuing to violate federal law as alleged

herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal laws;

j.      An order granting such other legal and equitable relief as the court deems just and proper.

k.      Award costs of this action including attorney's fees to the plaintiff pursuant to 42 U.S.C. § 1988 and any and all applicable attorney's fees and costs as imposed by state-law.

## A JURY TRIAL IS HEREBY DEMANDED

Dated: Hempstead, New York
       February 21, 2020

                                   Respectfully Submitted,

                                   LAW OFFICES OF
                                   FREDERICK K. BREWINGTON

                          By:      _____
                                   FREDERICK K. BREWINGTON
                                   CATHRYN HARRIS-MARCHESI
                                   *Attorneys for Plaintiff*
                                   556 Peninsula Boulevard
                                   Hempstead, New York 11550
                                   (516) 489-6959